**EXHIBIT 7**

1  JEANINE K. CLASEN, Counsel (SBN 164404)
   Department of Real Estate
2  P. O. Box 187007
   Sacramento, CA 95818-7007
3
4  Telephone:  (916) 227-0789
       -or-  (916) 227-0868 (Direct)
5



FILED
APR 16 2007
DEPARTMENT OF REAL ESTATE
By K. Mar

BEFORE THE DEPARTMENT OF REAL ESTATE

STATE OF CALIFORNIA

\* \* \*

In the Matter of the Accusation of   )
                                     )   No. H-9977 SF
K PLATINUM GROUP, INC. and           )
KANYA TENNYSHA COLEMAN,              )   ACCUSATION
                                     )
         Respondents.                )

The Complainant, E.J. HABERER II, a Deputy Real Estate Commissioner of the State of California, for cause of Accusation against K PLATINUM GROUP, INC. ("KPG") and KANYA TENNYSHA COLEMAN ("COLEMAN"), collectively herein "Respondents," is informed and alleges as follows:

I

The Complainant, E.J. HABERER II, a Deputy Real Estate Commissioner of the State of California, makes this Accusation in his official capacity.

II

At all times herein mentioned, Respondents were and now are presently licensed and/or have license rights under the

- 1 -

1  Real Estate Law, Part 1 of Division 4 of the Business and
2  Professions Code (herein "the Code").

### III

4  At all times herein mentioned, COLEMAN owned, managed,
5  supervised and controlled the activities of KPG, a corporation
6  doing business in the State of California and engaged in the
7  business of investing in real estate and/or real estate
8  securities.

### IV

10  At all times herein mentioned, KPG was and now is
11  licensed by the Department of Real Estate of the State of
12  California (herein "the Department") as a corporate real estate
13  broker by and through COLEMAN as designated broker-officer of
14  KPG to qualify said corporation and to act for said corporation
15  as a real estate broker.

### V

17  At all times herein mentioned, COLEMAN was and now is
18  licensed by the Department as a real estate broker, individually
19  and as designated broker-officer of KPG. As said designated
20  broker-officer, COLEMAN was responsible pursuant to Section
21  10159.2 of the Code for the supervision of the activities and
22  representations of the officers, agents, real estate licensees
23  and employees of KPG.

### VI

25  Whenever reference is made herein to an act or
26  omission of KPG, such allegation shall be deemed to mean that
27  officers, directors, employees, and/or agents of KPG committed

1  such act or omission while engaged in the furtherance of the
2  business or operations of KPG and/or COLEMAN while acting within
3  the course and scope of their authority and employment.

4  VII

5  Beginning on or about March 1, 2006 and continuing
6  through on or about February 1, 2007, Respondents advertised,
7  solicited, negotiated, obtained and/or accepted investment funds
8  from members of the general public (herein collectively
9  "Investors"), for purported investments through certain programs
10 which were created, advertised, operated and controlled by
11 Respondents, including the "Cash-on-Cash" program and the "Power
12 of Seven" program (herein collectively "Investment Programs"),
13 the essential terms of which are described below:

14   (a) Under the Cash-on-Cash program, Investors paid a
15   minimum of $25,000 (cash or cashier's check) to KPG in
16   exchange for promissory notes pursuant to which KPG
17   promised to pay the investor a return of 25% of the
18   invested principal over "the lifetime of the investment"
19   with KPG, with each investor promised the right to a
20   refund of the principal investment upon 30 days' written
21   notice.

22   (b) Under the Power of Seven program, Investors executed
23   written agreements with KPG and a California limited
24   partnership known as "Power of Seven Loan-Fund One Limited
25   Partnership" ("POS-LP"), pursuant to which each Investor
26   paid a minimum of $25,000 (cash or cashier's check), to KPG
27   in exchange for one or more "units" of interest in POS-LP,

- 3 -

in exchange for one or more "units" of interest in POS-LP, pursuant to a written agreement promising that the Investor would receive a monthly disbursement of $6,250 per "unit" of interest for a period of 7 months.

### VIII

Between on or about March 1, 2006 and on or about February 1, 2007, Respondents solicited and obtained funds from approximately 398 Investors for investment in the above-described Investment Programs, including the following persons: Chari Farmer-Ogogo on behalf of the "High IQ For Kids" organization ("OGOGO"); Autar Johal and Amree Johal ("JOHAL"); and Daniel B. Stephens and Doris Stephens ("STEPHENS").

### IX

In soliciting, negotiating and obtaining investments in the Investment Programs described above, including investments from the persons identified in Paragraph IX, above, Respondents made the following material representations of fact:

(a) that each Investor would receive a monthly disbursement from Respondents in the amount of 25% of his or her invested principal;

(b) that, after January 1, 2007, the Cash on Cash program would be "restructured" and Investors would receive new promissory notes;

(c) that upon 30 days' written notice, Investors in the Investment Programs could obtain a refund of their undistributed investment principal;

///

(d) That funds invested in the Investment Programs were at all times "insured and guaranteed" by New York Life Insurance Company.

X

At all times mentioned herein, each and every representation described in Paragraph IX, above, were false when made, as Respondents well and truly knew at the time Respondents made each such representations. In truth and fact:

(a) Respondents never intended to pay all of the promised monthly disbursements to Investors in the Investment Programs;

(b) Respondents never intended to provide new promissory notes to the Cash on Cash Investors after January 1, 2007;

(c) Respondents never intended to refund any Investor's undistributed investment principal if requested by the Investor;

(d) Funds invested in the Investment Programs were never "insured or guaranteed" by New York Life Insurance, or any other insurance carrier;

XI

The following Investors reasonably relied upon Respondents' material misrepresentations described in Paragraph IX, above, in paying funds to Respondents for investment in the Investment Programs, and were harmed thereby, as set forth below:

(a) Between September 2006 and October 2006, OGOGO paid $70,000 to Respondents for investment in the Cash on Cash

- 5 -

Program. From December 2006 and continuing through the present, Respondents have failed and refused to make any of the promised disbursements to OGOGO, refused to communicate directly with OGOGO and failed and refused to refund any of OGOGO's undistributed, invested principal.

(b)   On or about October 2006, JOHAL paid $100,000 to Respondents for investment in the Power of Seven program. From December 2006 and continuing through the present, Respondents have failed and refused to make any of the promised disbursements to JOHAL, refused to communicate directly with JOHAL and failed and refused to refund any of JOHAL'S undistributed, invested principal.

(c)   On or about August 2006, STEPHENS paid $25,000 to Respondents for investment in the Cash on Cash program. From December 2006 and continuing through the present, Respondents have failed and refused to make any of the promised disbursements to STEPHENS, refused to communicate directly with STEPHENS or refund any of STEPHENS' undistributed, invested principal.

XII

Respondents' acts and omissions, as alleged in paragraphs VIII through XI, above, constitute fraud and dishonest dealing.

///
///
///
///

- 6 -

XIII

Respondents acts and omissions, as alleged in Paragraphs VIII through XI, above, are grounds for the suspension or revocation of all licenses and license rights of Respondents COLEMAN and KPG under Sections 10177(j) of the Code.

WHEREFORE, Complainant prays that a hearing be conducted on the allegations of this Accusation and that upon proof thereof, a Decision be rendered imposing disciplinary action against all licenses and license rights of Respondents under the Code, and for such other and further relief as may be proper under provisions of law.

E.J. HABERER II
Deputy Real Estate Commissioner

Dated at Sacramento, California this 12th day of April, 2007.

- 7 -