1

**GAREEB | PHAM, LLP**

2   CHRISTOPHER Q. PHAM, Bar No. 206697
ALEXANDER S. GAREEB, Bar No. 207473

3   707 Wilshire Boulevard. Suite 5300
Los Angeles, California 90017

4   Telephone: (213) 455-2930

5   Facsimile: (213) 455-2940

6   Email: cpham@gareebpham.com

7   Attorneys for Defendant

8   KANYA TENNYSHA COLEMAN

9   **MEHLMAN & TERBEEK, LLP**

10  MARC TERBEEK, Bar No. 166098
2125 Oak Grove Road, Suite 125

11  Walnut Creek, California 94598

12  Telephone: (925) 935-3575
Facsimile: (925) 935-1798

13  Email: marc@mehlman-terbeek.com

14  Attorneys for Defendants

15  K PLATINUM GROUP, INC.; K PLATINUM

16  INTERNATIONAL GROUP, INC.; K PLATINUM
ASSOCIATES, INC.; K PLATINUM INTERNATIONAL

17  ASSOCIATES, INC.; K PLATINUM FINANCIAL, INC.;

18  K PLATINUM INTERNATIONAL FINANCIAL, INC.;
K PLATINUM REALTY, INC.;

19  K PLATINUM INTERNATIONAL REALTY, INC.;

20  BRENDA ANN MICHELSON;

21              UNITED STATES DISTRICT COURT -

22            NORTHERN DISTRICT OF CALIFORNIA

23

24  AVIS DOCTOR, CHARI OGOGO,          | Federal Case No: C07-03270 JL
PAULETTE MAYO, KAREN SMITH,

25  SUZETTE STEINBERG, THOMAS          | Please See Related:
STEINBERG,                          | Federal Case No. C07-03269 MJJ

26

27              Plaintiffs,            | State Case No: MSC07-01018

28        vs.

- 1 -
OPPOSITION TO MOTION FOR REMAND

1  KANYA TENNYSHA COLEMAN aka
   KANYA HILL aka KANYA MAXIMO,
2  CHARLES E. COLEMAN aka
3  CHARLES E. COLEMAN SR.,
   YVONNE E. GAMBLE, FREDERICK
4  C. GAMBLE, JORIE WRIGHT, FLOYD
5  W. WATSON, FELIX GOLDEN, K
   PLATINUM GROUP, INC., K
6  PLATINUM REALTY, INC., K
7  PLATINUM FINANCIAL, INC., K
   PLATINUM ASSOCIATES, INC., K
8  PLATINUM INTERNATIONAL, INC.,
9  K PLATINUM INTERNATIONAL
   ASSOCIATES, INC., K PLATINUM
10 INTERNATIONAL FINANCIAL, INC.,
11 K PLATINUM INTERNATIONAL
   GROUP INC., K PLATINUM
12 INTERNATIONAL REALTY, INC., K
13 PLATINUM PERSONNEL SERVICES,
   , K PLATINUM INTERNATIONAL
14 ASSOCIATE INVESTMENT, REAL
15 ESTATE PERSONNEL SERVICES a
   business organization unknown, REAL
16 LIFE CONSULTING, a business
17 organization unknown, OUTERSPHERE
   INC., OUTERSPHERE LLC,
18 OUTERSPHERE INVESTMENT
19 GROUP, LLC, BLUE SKY TRUST, a
   business organization unknown,
20 PROSPERITY MATTERS LLC,
21 POWER OF SEVEN LOAN-FUND
   ONE LIMITED PARTNERSHIP,
22 SANFORD AND PETERSON
23 INTERNATIONAL INVESTMENT
   GROUP, INC., LAND AMERICA aka
24 LAND AMERICA CAPITAL
25 CORPORATION, BRENDA ANN
   MICHELSON L. CAROL ANN
26 DICKSON, CLAYTON GRACE,
27 THOMAS JENKINS, VIKING
   APPRAISALS, CRAIG
28 BUCCELLATO, JESSICA ARANDA,

(Consolidated with State Case Nos.
MSC07-00049 [*Bruce Sarubin v. K
Platinum Group, Inc., et. al.*]; MSC07-
00080 [*Hemwattie Docu et. al., Kanya
Coleman, et. al.*]; MSC07-00106 [*Newell
Walker v. K Platinum Group, Inc., Kanya
Coleman, et. al.*]; MSC07-00454 [*Jimmie
T. Braden, Sr. v. R.E.P.S. Real Estate
Servcs, K Platinum International Group,
Inc., et. al.*]; MSC07-00483 [*Dorothy
Daniels v. K Platinum, Inc. et. al.*];
MSC07-00484 [*Theatris Ervin v. K
Platinum Group, Inc., Kanya Coleman,
Jorie Wright*]; MSC07-00485 [*Rendy
Lola Perkins v. K Platinum Group, Inc.,
Kanya Coleman, Jorie Wright*]; MSC07-
00486 [*Donna Wilson v. K Platinum
Group, Inc., Kanya Coleman, Jorie
Wright*]; MSC07-01016 [*Avis Doctor,
Chari Ogogo, Paulette Mayo, Karen
Smith, Suzette Steinberg, Thomas
Steinbert v. K Platinum Group, Inc. et.
al.*]; MSC07-01075 [*Charmaine Bennett
v. K Platinum Group, et. al.*]

**JOINT OPPOSITION OF
DEFENDANTS TO MOTION TO
REMAND TO STATE COURT
BROUGHT BY PLAINTIFFS AVIS
DOCTOR, ET AL., AND DOROTHY
DANIELS, ET AL.**

Date:      September 19, 2007
Time:      9:30 A.M.
Ctrm:      F

# TABLE OF CONTENTS

Table of Contents ........................................................................................... i

Table of Authorities ....................................................................................... ii

I.    STATEMENT OF FACTS .......................................................................3

II.   REMOVAL TO FEDERAL COURT WAS TIMELY. ...........................7

III.  ALL DEFENDANTS THAT HAD BEEN SERVED AT THE TIME OF THE REMOVAL CONSENTED TO REMOVAL TO FEDERAL COURT. ...............................................................................................10

IV.   PLAINTIFFS ARE ENGAGING IN MANIPULATIVE TACTICS IN ORDER TO SECURE A STATE FORUM. .............................................13

    A.   Plaintiffs' Dismissal of the RICO Claims were Accomplished Solely to Avoid Federal Jurisdiction............................................................. 14

    B.   Plaintiffs' Purported State Law Claims are in Reality Federal Claims.............................................................................................16

V.    DEFENDANTS HAVE NOT WAIVED THEIR RIGHTS TO REMOVAL. ............................................................................................19

VI.   CONCLUSION .....................................................................................20

1

**TABLE OF AUTHORITIES**

2 **U.S. Supreme Court Cases**

3 *Carnegie-Mellon Univ. v. Cohill*, 484 *U.S.* 343, 357 (1988).......................................................... 14

4 *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981) ....................................... 16

5 *Franchise Tax Bd.*, 463 U.S. at 22, 27-28 (1983)........................................................................ 16

6 *SEC v. Howey, Co.*, 328 *U.S.* 293, 299 (1946) ........................................................................... 17

7 *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 *U.S.* 283, 294 (1938) ......................... 15, 16

8 United Housing Foundation Inc. v. Forman, 421 U.S. 837, 895 (1975), ...................................... 17

9 **Circuit Court Cases**

10 *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 936 (9th Cir. 2003). ....... 13, 14

11 *Easton v. Crosland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir. 1997)............................... 14, 15

12 *California ex rel. Lockyer v. Dynegy, Inc.* 375 F3d 831, 840-841 (9th Cir. 2004) ..................... 17

13 *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Circuit 1997)................................................. 12

14 *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) ................................. 13

15 *Rothner v. City of Chicago* 879 F.2d 1402, 1418 (7th Cir. 1989). ............................................... 19

16 *Slaveson v. Western States Bankcard* Association, 731 F.2d 1423, 1429 (9th Cir. 1984). .......... 10

17 *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209,

18 1213 (9th Cir. 1998)..................................................................................................................... 13

19 **District Court Cases**

20 *Beasley v. Union Pac. R.R. Co.*, 497 F.Supp. 213, 216 (D. NE 1980). ........................................ 19

21 *Patterman v. Travelers, Inc.*, 11 F.Supp.2d 1382, 188-1389 (S.D. GA 1997)............................. 14

22 **Statutes**

23 Securities Exchange Act of 1934, 15 *U.S.C.* § 78 and Rule 10b-5............................................... 16

24 18 *U.S.C.* §1961 ................................................................................................................... passim

25 18 *U.S.C.* §1964(c) ................................................................................................................ 15, 20

26 28 *U.S.C.* § 1446.................................................................................................................... 7, 8, 9

27

28

1    and DOES 1 to 500, INCLUSIVE,

2              Defendants.

3

4         COMES NOW Defendants K Platinum Group, Inc.; K Platinum

5    International Group, Inc.; K Platinum Associates, Inc.; K Platinum International

6    Associates, Inc.; K Platinum Financial, Inc.; K Platinum International Financial,

7    Inc.; K Platinum Realty, Inc.; K Platinum International Realty, Inc. (collectively,

8    "K Platinum entities"); Kanya Tennysha Coleman ("Coleman"); Brenda Ann

9    Michelson ("Michelson") hereby file this Joint Opposition to the Motions to

10   Remand to State Court brought by Plaintiffs Avis Doctor ("Doctor"), Chari Ogogo

11   ("Ogogo"), Paulette Mayo ("Mayo"), Karen Smith ("Smith"), Suzette Steinberg

12   ("Steinberg") and Thomas Steinberg ("Steinberg"), as well as Dorothy Daniels

13   ("Daniels"), Theatris Ervin ("Ervin"), Rendy Lola Perkins ("Perkins"), and Donna

14   Wilson ("Wilson").

15   **I.    STATEMENT OF FACTS**

16        This subject matter of this litigation is the "Cash-on-Cash" Program

17   ("Program") created and operated through K Platinum Group, Inc. and its affiliated

18   K Platinum entities.  The Program was designed to reorganize the K Platinum

19   entities into a mortgage bank utilizing a warehouse lending facility.  Capital was

20   raised through credit lines funded by the profits generated through the principal

21   amounts received from each Program participant.  These monies were, in turn,

22   secured by promissory notes from the K Platinum entities which provided a return

23   of 25% of the principal per month so long as profits were generated for that period.

24        Unfortunately, due to a series of personal setbacks in her life, including a

25   protracted divorce and custody battle, the break-up of her second marriage

26   engagement, and the medical difficulties which beset her third pregnancy, Ms.

27   Coleman, from September 2006 to December 2006, was forced to turn over

28   management of the day-to-day operations to less qualified individuals.  As a

1  consequence of the poor management of the K Platinum entities, several of the

2  interest payments issued to the Program participants were non-negotiable, as they

3  were mistakenly drawn from the wrong K Platinum bank account.

4  As a result of these non-negotiable checks, and although monthly payments

5  were never guaranteed by the K Platinum entities, a substantial number of the

6  Program's participants demanded return of their principal. Consequently, this

7  created a "run on the bank" in that K Platinum could not honor all of the

8  participants' demands.

9  Subsequently, on February 18, 2007, the Federal Bureau of Investigations

10  searched and seized all lending, accounting, and bank accounts, as well as

11  corporate and business documents from K Platinum's offices located in Walnut

12  Creek, California. The FBI also seized all computers and hard drives from the K

13  Platinum premises. [See Declaration of Christopher Q. Pham ("Pham Decl.") ¶2,

14  Exhibit "A"]. The search warrant was ordered by United States Magistrate Judge

15  James Larson. Nonetheless, to date, no law enforcement agency has filed a

16  criminal complaint or indictment against the K Platinum entities or Ms. Coleman.

17  Several of the Program participants initiated separate law suits in the

18  Superior Court of Contra Costa County. On March 22, 2007, through a Notice and

19  Acknowledgment of Receipt, Defendant Coleman and the K Platinum entities were

20  served with the Summons and Complaint for the case: *Hemawattie Docu and*

21  *Theodore Docu v. Kanya Coleman, et al.*, Superior Court Case No. MSC0700080.

22  (*See* Pham Decl. ¶3, Exhibit "B"). **Less than two weeks later, however, the**

23  **parties reached a settlement agreement as to all claim in the *Docu* action.** (*See*

24  Pham Decl. ¶4, Exhibit "C").[1]

25

26

---

27  [1] Due to a confidentiality provision in the settlement agreement, only the signature pages of all parties are being
produced to the Court. As agreed by the parties, the *Docu* action was not dismissed until 95 days after the execution

28  of the settlement agreement in order to address Plaintiff Docu's concern of the possible disgorgement of the
settlement amount, pursuant to 11 U.S.C. § 547 and *Fed. R. Bankr. P.* 7001, in event that the K Platinum entities
seek bankruptcy protection.

1    On May 15, 2007, an action was commenced in the Superior Court of Contra

2    Costa County entitled *Avis Doctor, Chari Ogogo, Paulette Mayo, Karen Smith,*

3    *Suzette Steinberg, Thomas Steinberg v. Kanya Coleman, et. al.*, Superior Court

4    Case No. MSC0701016.  As a tenth cause of action, Plaintiffs Levesque and Roach

5    alleged violations of the RACKETEER INFLUENCED AND CORRUPT

6    ORGANIZATIONS statute ("RICO") 18 *U.S.C.* §1961 *et seq.*  The Plaintiffs in the

7    state court action are represented, Christopher R. Lucas of the Law Offices of

8    Goforth & Lucas, who incidentally, also on May 15, filed a separate, second, but

9    identical action entitled: *Amy Levesque, George Roach v. Kanya Coleman, et. al.*,

10    Superior Court Case No. MSC0701018.  Defendant Coleman and the K Platinum

11    entities were served with the Summons and Complaint for the *Levesque* case and

12    the *Doctor* case on May 25, 2007.  (*See* Pham Decl. ¶5, Exhibit "D").Similarly, on

13    June 3, 2007, Defendant Michelson was served with the two separate Complaints.

14    (*See* Pham Decl. ¶6, Exhibit "E").

15    On or about May 29, 2007, Plaintiff Charmaine Bennett and Plaintiff

16    Dorothy Daniels brought separate motions requesting the Court to issue a

17    Temporary Restraining Order (TRO) freezing all accounts and assets of the K

18    Platinum entities, and appointing a Receiver to oversee their operations. The

19    Superior Court of Contra Costa County issued the TRO on June 8, 2007.

20    Additionally, on the same day, June 8, the Superior Court issued an Order

21    consolidating all 11 open and pending lawsuits against the K Platinum entities into

22    the lead case, *Bruce Sarubin v. K Platinum*, et al., Superior Court Case No.

23    MSC0700049.  The consolidation included the subject suits brought by Plaintiffs

24    Doctor *et al.*, and Plaintiffs Daniels, Ervin, Perkins, and Wilson, into a single

25    action.  (*See* Pham Decl. ¶7, Exhibit "F").  Moreover, during the June 25, 2007,

26    Status Conference, the State Court stated that as a result of the consolidation, the

27    Notice of Removal operated to transfer all cases to Federal Court. (*See* Pham Decl.

28    ¶8, Exhibit "G")

On June 21, 2007, Defendants Coleman, the K Platinum entities, and Michelson filed a Notice of Removal, removing the *Levesque* case and the *Doctor* case to Federal Court. As the two cases were filed separately in state court, Defendants also filed a separate Notice of Removal for each case. At the time of the removal, only the K Platinum entities, and Defendants Coleman and Michelson had been served with the Summons and Complaint for the *Doctor case*. Defendants Charles E. Coleman, Yvonne E. Gamble, Frederick C. Gamble, Jorie Wright, Floyd W. Watson, Felix Golden, Carol Ann Dixon, Clayton Grace, Thomas Jenkins, Craig Buccellato, and Jessica Aranda had not been served with the state court complaints discussed herein.

Defendants Real Life Consulting and Real Estate Personnel Services were purportedly served on May 24, 2007, with the Proofs of Services not filed until July 18, 2007. The Proof of Service re Summons and Complaint for Real Life Consulting indicated service on its president, Kanya Coleman. As verified by the California Secretary of State's website, Real Life Consulting is not incorporated either as a corporation or limited liability company in California. (*See* Pham Decl. ¶9, Exhibit "H"). Moreover, as an unincorporated business organization, Real Life Consulting has no affiliation with Ms. Coleman or any of the K Platinum entities. As such, Real Life Consulting remains to this day an unserved Defendant in this matter. [*See* Declaration of Kanya Coleman ("Coleman Decl."), ¶2].

Similarly, as per an investigation conducted on the California Secretary of State's website, it was determined that Defendant Real Estate Personnel Services is not an entity incorporated as either as a corporation or limited liability company in California. In point of fact, Real Estate Personnel Services is merely the fictions business name for Defendant K Platinum Associates, Inc., which is registered with the California Department of Real Estate. (*See* Pham Decl. ¶10, Exhibit "I"; Coleman Decl., ¶3).

1    Defendant Prosperity Matters, LLC was also purportedly served on May 31,

2  2007.  However, Plaintiffs Doctor *et al*. did not file the Proof of Service for this

3  entity until July 18, 2007.   Accordingly, Defendants had no opportunity to learn of

4  the service upon this entity at the time of the Notice of Removal.  (*See* Pham Decl.

5  ¶11, Exhibit "J").  Given the consent provided by Defendants Coleman and

6  Michelson to the Notice of Removal, all served Defendants joined in the subject

7  removal of the present action to this Court.

8  **II.    REMOVAL TO FEDERAL COURT WAS TIMELY.**

9    In their Motions for Remand, Plaintiffs desperately and ineffectually argue

10  that the removal was untimely because the *Docu* action was not timely removed to

11  Federal Court.  The *Docu* action was of course not removed because it was settled

12  prior to the 30 day statutory period for removal.   As such, there was no reason to

13  remove the *Docu* case when the parties were able to resolve that litigation at its

14  infancy without need for exhaustively expending attorneys' fees and costs and the

15  court's resources.

16    Therefore, the only other state actions which raised a federal questions

17  warranting federal court jurisdiction are the removed actions presently at issue.

18  Pursuant to 28 *U.S.C.* § 1446, the time period for removal is "thirty days after

19  receipt by the defendant, through service or otherwise, of a copy of an amended

20  pleading, motion, order or other paper from which it may first be ascertained that

21  the case is one which is or has become removable."  In the instant case, on May 25,

22  2007, Defendant Coleman and the K Platinum entities were served with two

23  separate Complaints; the first Complaint was for the case: *Amy Levesque, George*

24  *Roach v. Kanya Coleman, et. al.*, Superior Court Case No. MSC0701018, and the

25  second Complaint was for the case *Avis Doctor, Chari Ogogo, Paulette Mayo,*

26  *Karen Smith, Suzette Steinberg, Thomas Steinberg v. Kanya Coleman, et. al.*,

27  Superior Court Case No. MSC0701016.  Similarly, on June 3, 2007, Defendant

28  Michelson was served with these two separate Complaints.

1    It must be noted here, that although two separate suits were initiated in the
2  Superior Court of Contra Costa County, the named Plaintiffs for the *Levesque* case
3  and the *Doctor* case were represented by the same counsel, *i.e.* Christopher R.
4  Lucas, with the Complaint themselves containing identical allegations.  In point of
5  fact, both Complaints alleged as their tenth cause of action violations of the
6  RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS statute
7  ("RICO") 18 *U.S.C.* §1961 *et seq.*

8    In light of the foregoing, under 28 *U.S.C.* § 1446, the last date upon which to
9  remove the present action to Federal Court is 30 days from May 25, 2007, or **June
10  25, 2007**.  Defendants Coleman and Michelson, as well as the K Platinum entities
11  timely filed their Notice of Removal on **June 21, 2007**.

12    In their opposition Plaintiffs Doctor *et al.* attempt to distract the Court, from
13  the consequences of filing their RICO claims against Defendants, by arguing that
14  the consolidation of the Superior Court cases dictates that the 30 days for removal
15  begins with the service on Defendants of the first Complaint containing RICO
16  claims, *i.e.* the Complaint for the *Docu* action, which was served on Defendants on
17  March 29, 2007.  Such an argument is simply illogical.

18    First, it must be remembered that consolidation was not ordered for all the
19  Superior Court cases until June 8, 2007. Prior to this date, each suit was litigated
20  separately or independently from the other.  If as Plaintiffs Doctor *et al.* argue, that
21  the time for removal was the service of the Complaint in the *Docu* case, the final
22  day for removal would be on or about April 29, 2007.  Accordingly, whether
23  Defendants removed the *Docu* case to Federal Court would have no impact on the
24  *Levesque* and *Doctor* cases, which were not filed until May 15, 2007, or any other
25  suit for that matter, as the cases were still treated separately and independently
26  before the June 8, 2007, consolidation.

27    Secondly, it must also be noted that the parties in the *Docu* case reached and
28  executed a settlement agreement in late March 2007.  In this way, by the time the

1    initial pleadings were served on Defendants in the *Docu* case, the case was

2    inherently irremovable as being settled. It was only a mere happenstance that the

3    agreement in the *Docu* case called for the Dismissal not to be filed until 95 days

4    after the execution of the agreement, so that the *Docu* case was consolidated with

5    the other State Court cases and thereby included in the removal to Federal Court.

6       Based on these circumstances, the cases that were removable, by virtue of

7    raising a federal question, at the time of Defendants filed their Notice of Removal

8    were Superior Court Case No. MSC0701018, *i.e.* the *Levesque* case, and Superior

9    Court Case No. MSC0701016, *i.e.* the *Doctor* case, which, again, must be

10   remembered, was filed separately by counsel for Plaintiffs' Christopher R. Lucas.

11   It is amazing that Plaintiffs, who are the master of their own pleadings, are now

12   complaining that this Court has no jurisdiction because of some other action which

13   was settled.

14       Similarly, Plaintiffs Daniels, Ervin, Perkins, and Wilson, who are all

15   represented by counsel Ronald W. Carter, in their Motion to Remand, make the

16   same faulty argument that instant Notice for Removal was untimely because

17   service of their respective Complaints occurred on or about March 26, 2007. As

18   set forth above, Section 1446 does not necessarily pin the time period for removal

19   on service of the Complaint and Summons on Defendants, but rather, on the

20   service of any "pleading, motion, order or other paper which it may first be

21   ascertained that the case is one which is or has become removable."

22       In the instant case, it was not only until the service of the Complaint in the

23   *Levesque* and *Doctor* case, on May 25, that an express federal question arose in

24   this matter. Additionally, it was the consolidation by the State Court that now

25   treats these separate cases as one. Indeed, at the state court hearing on June 25,

26   2007, the state court opined that," If the case is consolidated, it would appear to me

27   that the entire case is removed." (*See* Pham Decl. ¶8, Exhibit "G"). Accordingly,

28   pursuant to section 1446, the instant Notice of Removal is timely.

## III.  **ALL DEFENDANTS THAT HAD BEEN SERVED AT THE TIME OF THE REMOVAL CONSENTED TO REMOVAL TO FEDERAL COURT.**

Plaintiffs' in their Motion to Remand misleadingly argue that all named Defendants must consent to the Notice of Removal for a removal to be valid.  It is well settled case law however, that Defendants that have not been served in the state court action need not join the Notice of Removal.  *Slaveson v. Western States Bankcard* Association, 731 F.2d 1423, 1429 (9th Cir. 1984).

As set forth above, Notice of Removal in this matter was filed on June 21, 2007.  At that time the only entities served with the operative Complaint were K Platinum Group, Inc.; K Platinum International Group, Inc.; K Platinum Associates, Inc.; K Platinum International Associates, Inc.; K Platinum Financial, Inc.; K Platinum International Financial, Inc.; K Platinum Realty, Inc.; K Platinum International Realty, Inc. (collectively, "K Platinum entities"); Kanya Tennysha Coleman; North American Title Company, Inc., and Brenda Ann Michelson.

Defendants Charles E. Coleman, Yvonne E. Gamble, Frederick C. Gamble, Jorie Wright, Floyd W. Watson, Felix Golden, Carol Ann Dixon, Clayton Grace, Thomas Jenkins, Craig Buccellato, and Jessica Aranda have not been served with the state court Complaints at the time of the removal.  Neither were the non-K Platinum business entities, Real Estate Personnel Services, Real Life Consulting, Outersphere, Inc., Outersphere, LLC, Outersphere Investment Group, LLC, Prosperity Matters LLC, Power of Seven Loan-Fund One Limited Partnership, Sanford and Peterson International Investment Group, Inc., Land America aka Land America Capital Corporation, and Blue Sky Trust served with the Summons and Complaint at the time of Removal.

In light of the Declarations of Ms. Coleman, on behalf of herself and the K Platinum entities, and of Ms. Michelson, and the joinder to removal filed by North American Title Company, Inc., providing their consent to the Removal, the Notice

1   of Removal filed on behalf of the K Platinum entities was consented to and agreed

2   upon by all known served Defendants.

3       In their Opposition, Plaintiffs Doctor *et al*. make the claim that the Notice of

4   Removal is procedurally deficient in that it was not joined by *all* Defendants

5   including those not yet served with the Summons and Complaint. As stated this

6   simply is not the law. By Plaintiffs' own admissions, Defendants Power of Seven

7   Loan-Fund One Limited Partnership, Sanford and Peterson International

8   Investment Group, Inc., Land America aka Land America Capital Corporation, as

9   well as Outersphere, Inc. and Outersphere Investment Group, LLC have not been

10  served with the operative Summons and Complaint. Similarly, Plaintiff Levesque

11  and Roach admit that Defendant Clayton Grace was not served until June 24,

12  Defendant Felix Golden was not served until June 29, Defendant Rob Ferguson

13  was not served until July 10. Accordingly, the consent and joinder of these

14  Defendants need not have been obtained for the instant Notice of Removal, which

15  was timely filed on June 21, 2007.

16      Plaintiffs Doctor *et al*. also make the claim that Defendant Prosperity

17  Matters, LLC was served on May 31, and Defendants Real Life Consulting and

18  Real Estate Personnel Services were served on May 24. What Plaintiffs neglect to

19  say is that the service to Defendants Real Life Consulting is defective. In their

20  Proof of Service, Plaintiffs attest that they served Real Life Consulting through its

21  president Kanya Coleman. First, as verified by the California Secretary of State's

22  website, Real Life Consulting is not incorporated either as a corporation or limited

23  liability company in California. Second, as an unincorporated business

24  organization, Real Life Consulting has no affiliation with Ms. Coleman or any of

25  the K Platinum entities. As such, Real Life Consulting remains to this day an

26  unserved Defendant in this matter.

27      Similarly, Defendant Real Estate Personnel Services is not an entity

28  incorporated as either as a corporation or limited liability company in California.

- 11 -
OPPOSITION TO MOTION FOR REMAND

1   In point of fact, Real Estate Personnel Services is merely the fictions business
2   name for Defendant K Platinum Associates, Inc., which is registered with the
3   California Department of Real Estate. Accordingly, the joinder and consent of
4   Real Estate Personnel Services was not needed as K Platinum Associates, Inc. was
5   one of the K Platinum Entities which moved for Removal in the first place.

6   Finally, although Defendant Prosperity Matters, LLC was served on May 31,
7   Plaintiffs' Levesque and Roach neglect to state that the Proof of Service for this
8   entity was not served until July 18, 2007, after the instant Notice of Removal was
9   filed on June 21, 2007. As held by Federal Courts, there is no affirmative duty by
10  a defendant who has been served to seek out and notify co-defendants who have
11  not yet been served to ask them to join in the removal. *See Gossmeyer v.*
12  *McDonald*, 128 F.3d 481, 489 (7th Circuit 1997). Thus, a removing party has no
13  affirmative duty to contact every named defendant, especially with over thirty
14  named defendants in this action, to ascertain whether they have been served.

15  Rather, it is Plaintiffs' affirmative duty to file and serve the appropriate
16  proof of service, which they failed to do so until after the removal of this action.
17  This notwithstanding, Plaintiffs, in the instant case refrained from filing Proof of
18  Service on Defendant Prosperity Matters, LLC until July 18, more than a month
19  since the purported date of service. Accordingly, at the time of the removal, June
20  21, there was no way in which the Noticing Parties could know that Defendant
21  Prosperity Matters, LLC, had appeared in this matter, or even whether it was
22  served with the operative Summons and Complaint.

23  On the basis of the foregoing, all named Defendants that have been served
24  with the operative Summons and Complaint joined and consented to the present
25  removal. Such Defendants who did not join in the Notice of Removal were not
26  required to be joined at the time, as they were either unserved, or served at a later
27  time. Accordingly, the instant Notice of Removal is procedurally proper as to
28  mandate remand to State Court.

## IV.    **PLAINTIFFS ARE ENGAGING IN MANIPULATIVE TACTICS IN ORDER TO SECURE A STATE FORUM.**

In their Opposition, Plaintiffs Doctor *et al.*, and Plaintiffs Daniels, Ervin, Perkins, and Wilson once more attempt to mislead the Court by arguing that the post-removal dismissal of the RICO claims by Plaintiffs in the *Doctor* case mandate remand of the entire action back to State Court. In what can only be described as an act of pure gamesmanship, Plaintiffs, even after the removal of the action, filed their Dismissals of the RICO claim in State Court, which no longer has jurisdiction of this action. Indeed, to date, Plaintiffs have not filed a dismissal of any claims in this Court.

However, it is well settled law that Removal jurisdiction based on a federal question is determined from the Complaint as it existed at the time of removal, not as subsequently amended. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). Plaintiffs themselves created the federal subject matter jurisdiction by their very own pleadings. Plaintiffs cannot now forum shop by dismissing the federal issue after the actions had been properly removed to this Court.

Accordingly, if federal claims existed at the time of removal, a later amendment deleting all federal claims does not affect the federal court's subject matter jurisdiction, even though only state law claims remain. *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)("plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based"). That is to say, if a claim "arising under" federal law existed at the time of removal, the federal court has the discretion to exercise supplemental jurisdiction over state law claims even after the federal claims have been dismissed. *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 936 (9th Cir. 2003).

///

In the instant case, Plaintiffs have utilized several disingenuous tactics in order to secure for themselves a State Court forum to the detriment of Defendants. First, Plaintiffs dismissed the Federal Claims to give the impression that only state claims are left to be adjudicated in this matter. Second, Plaintiffs' carefully crafted their allegations in order to disguise the federal nature of their suits.

## A.    Plaintiffs' Dismissal of the RICO Claims were Accomplished Solely to Avoid Federal Jurisdiction.

As demonstrated, legislative history shows Congress intended that federal courts exercise discretion whether to remand a case to state court after all federal claims are dismissed. *Albingia Versicherungs A.G.*, 344 F.3d at 936.   In deciding whether to exercise jurisdiction, a Federal Court may consider whether plaintiff has engaged in "manipulative tactics"—i.e., tactics designed to manipulate the forum back to state court upon removal. *Carnegie-Mellon Univ. v. Cohill*, 484 *U.S.* 343, 357 (1988) ("if the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case").

In the instant case, it is undisputed that there were ample grounds for removal of the *Doctor* case to Federal court on the basis of a federal question. The Plaintiffs in the *Doctor* case alleged in their Complaint violations of 18 *U.S.C.* §1961 *et seq.*, stating that Defendants were engaged in a pattern of racketeering activity through the sale of fraudulent securities. In addition, the Plaintiffs in the *Doctor* case sought relief under 18 *U.S.C.* §1964(c) requesting treble damages, costs of the suit, and attorney's fees.

Accordingly, Plaintiffs cannot not argue, as they do, that their RICO claims are merely peripheral or extensions of their state law claims. Plaintiffs improperly rely on cases such *Easton v. Crosland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) and *Patterman v. Travelers, Inc.*, 11 F.Supp.2d 1382, 188-1389 (SD GA

1   1997) for the proposition that mere citation of the federal statutes do not give rise
2   to federal jurisdiction.  However, those cases are easily distinguished from the case
3   at bar.

4       In *Easton*, the court found the references to federal law were merely
5   peripheral to the plaintiff's suit because no remedies unique to federal law were
6   sought by plaintiff, such as attorney's fees. 114 F.3d 979 at 982.  Additionally, in
7   *Patterman*, the court held there was no federal question because the claimed
8   violations of federal mail and wire fraud statutes were elements of plaintiff's state
9   RICO action.  11 F.Supp.2d 1382 at 188-1389.  Unlike the plaintiffs in the *Easton*
10  and *Patterman* cases, the Plaintiffs of the *Doctor* case have specifically relied and
11  asserted claims under the federal RICO statute, going so far as to pray from relief
12  uniquely authorized under 18 *U.S.C.* §1964(c), *i.e.* treble damages, costs of the
13  suit, and attorney's fees.

14      In light of the foregoing, removal jurisdiction clearly existed at the time of
15  the Notice of Removal.  Now, upon removal of the action to Federal Court,
16  Plaintiffs' Doctor *et al*. without explanation dismiss their RICO cause of action,
17  and declare that there are now no grounds upon which this Court may exercise
18  jurisdiction as only state law claims exist.  Consequently, it is evident that
19  dismissal of the RICO claims was done primarily to make it appear that only
20  questions of state law exist in this matter so as to avoid federal jurisdiction.

21      If Plaintiffs are allowed to mandate a remand of the instant action back to
22  state court on the basis of the dismissal of the RICO claims, it would allow the
23  practice prohibited in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 *U.S.*
24  283, 294 (1938), which held that a properly removed diversity action should not
25  have been remanded to state court when the damages at issue later appeared to be
26  less than the jurisdictional amount. In concluding that the status of the case at the
27  time of removal was controlling, the Court reasoned that, "If the plaintiff could, no
28  matter how *bona fide* his original claim in the state court, reduce the amount of his

1    demand to defeat federal jurisdiction, the defendant's supposed statutory right of

2    removal would be subject to the plaintiff's caprice. The claim, whether well or ill

3    founded in fact, fixes the right of the defendant to remove, and the plaintiff ought

4    not to be able to defeat that right and bring the cause back to the state court at his

5    election." *Id.* Similarly, to permit the instant Plaintiffs to mandate remand of the

6    present action back to state court simply by through their dismissal of their federal

7    claims, will likewise subject Defendants' "supposed statutory right of removal ... to

8    the Plaintiffs' caprice."

9        **B.**    **Plaintiffs' Purported State Law Claims are in Reality Federal**

10       **Claims.**

11         It is readily apparent in the instant case that the essential subject matter of

12   the litigation, as set forth by Plaintiffs' allegations, are predominantly federal

13   questions, as evidenced by the federal search warrant and pending federal

14   investigation.  This notwithstanding, Plaintiffs seek a remand through creative, but

15   non-cogent, arguments which purport that only state issues are involved in this

16   action.  In deciding whether to exercise jurisdiction over the present action, this

17   Court must also consider the fact that the purported state law claims of Plaintiffs

18   involve resolution of substantial questions of federal law.  It is well settled law that

19   a plaintiff may not avoid federal question jurisdiction by "omitting to plead

20   necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 27-

21   28 (1983). Rather, federal jurisdiction may arise if the complaint establishes that

22   the right to relief under state law requires resolution of a substantial question of

23   federal law. *Id.* at 13.

24         Thus the removal court may seek to determine whether the real nature of the

25   claim is federal, regardless of the plaintiff's characterization. *Federated Dep't*

26   *Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2 (1981).  Accordingly, even if only

27   state law claims are pleaded, the action is removable because the relief sought is

28   "predicated on a subject matter committed exclusively to federal jurisdiction." *See*

1  *California ex rel. Lockyer v. Dynegy, Inc.* 375 F3d 831, 840-841 (9th Cir. 2004)

2  (upholding exclusive federal jurisdiction over violations of the Securities Exchange

3  Act of 1934, 15 *U.S.C.* § 78aa and Rule 10b–5 thereunder).

4      In the instant case, even a simple analysis of the Complaint reveals that

5  Plaintiffs claims are predicated upon adjudication of Federal Securities law.  As

6  established 15 *U.S.C.* § 78aa provides the "The district courts of the United States

7  … shall have exclusive jurisdiction of violations of this title or the rules and

8  regulations thereunder, and of all suits in equity and actions at law brought to

9  enforce any liability or duty created by this title or the rules and regulations

10  thereunder."  Additionally, the term security is defined as: any note, stock, treasury

11  stock, bond, debenture, certificate of interest or participation in any profit-sharing

12  agreement … or any investment contract. 15 *U.S.C.* § 78c(a)(10).

13      In *SEC v. Howey, Co.,* 328 *U.S.* 293, 299 (1946), the Supreme Court first

14  defined the term "investment contract" stating that an investment contract for

15  purposes of the Securities Act means a contract, transaction or scheme whereby a

16  person invests his money in a common enterprise and is led to expect profit solely

17  from the efforts of the promoter or a third party.  In *United Housing Foundation*

18  *Inc. v. Forman,* 421 U.S. 837, 895 (1975), the Supreme Court further stated that

19  "what distinguishes a security transaction-and what is absent here-is an investment

20  where one parts with his money in the hope of receiving profits from the efforts of

21  others, and not where he purchases a commodity for personal consumption or

22  living quarters for personal use."

23      In light of the foregoing, Plaintiffs state law fraud and breach of contract

24  claims relating to the cash-on-cash program are in fact allegations of violations of

25  Rule 10-b5 which, as stated in *California ex rel*, are subject matters committed

26  exclusively to federal jurisdiction.  For example, in their First Cause of Action for

27  Fraud, Plaintiffs' allege that Defendants misrepresented that the "cash-on-cash

28  program was a legitimate investment, that defendants would use the funds invested

1   to earn profits through real estate investments and the purchase of undervalued

2   properties, and that investors would be paid 25% of their initial investment per

3   month." *Doctor* Complaint, ¶18(e).  According to Plaintiffs, the "cash-on-cash

4   program was a fraudulent scheme, in which Defendants used money paid by new

5   investors to make payments to prior investors.  Defendants did not use the funds

6   invested to earn profits through real estate investments [or] buying undervalued

7   property." *Doctor* Complaint, ¶19(e).  Indeed it is readily apparent, that even

8   Plaintiffs' themselves consider the matter to be one of Federal Securities law, in

9   that they have brought Federal RICO claims against Defendants alleging that

10  Defendant committed "fraud in the sales of securities." *Doctor* Complaint, ¶66.

11          Therefore, regardless of how creative Plaintiffs allegations are, and which

12  claims remains and were dismissed, the pleadings are replete with allegations of

13  federal securities fraud and violations.  Plaintiff should not be able to dismiss their

14  RICO and claim, in disguise, that only state claims remains operative when the

15  Complaint, and nucleus of facts and transactions, continues to predominantly

16  exude federal issues.

17          Similarly, Plaintiffs Daniels, Ervin, Perkins, and Wilson, who are all

18  represented by Attorney Ronald W. Carter, and who filed separate but identical

19  Complaints, alleged in their respective Pleadings that "Defendants represented that

20  they were going to use plaintiffs' investment to purchase real estate for business

21  purposes," but instead "Defendants did not purchase any real estate for business

22  purposes, and had no intention of paying plaintiffs' [return] on their investment."

23  *Daniels, Ervin, Perkins, and Wilson* Complaints, ¶FR-2.

24          Based on these allegations, adjudication of whether Defendants violated

25  Rule 10b-5 by "(a) employing a device, scheme, or artifice to defraud; (b) making

26  any untrue statement of a material fact or to omit to state a material fact necessary

27  in order to make the statements made, in light of the circumstances under which

28  they were made, not misleading; or (c) engaging in any act, practice, or course of

1  business which operates or would operate as a fraud or deceit upon any person, in

2  connection with the purchase or sale of any security," is outcome determinative as

3  to Defendants' liability, if any, as to the cash-on-cash program.

4      Indeed, the inherent federal nature of this claim is plainly evident when on

5  February 18, 2007, the Federal Bureau of Investigations was able to demonstrate to

6  U.S. District Court Magistrate Judge James Larson sufficient probable cause as to

7  a violation of federal law so as to issue a search warrant ordering the seizure of the

8  K Platinum entities' accounting, lending, and business records, as well as their

9  computers and hard drives.  Based on the foregoing, this Court must consider

10  Plaintiffs' manipulative dismissal of its RICO claims, as well as the substantial

11  questions of federal law prevalent in this lawsuit, in making its determination to

12  exercise its discretion to maintain jurisdiction over the present suit.

13  **V.**    **DEFENDANTS HAVE NOT WAIVED THEIR RIGHTS TO**

14      **REMOVAL.**

15      Plaintiffs make the absurd claim that merely because Defendants opposed

16  the Temporary Restraining Order freezing the assets of the K Platinum entities, and

17  appointing a receiver, that Defendants show how waived their right to remove a

18  state action to Federal Court.  It is well settled, however, that actions which are

19  preliminary and not conclusive in character, and which do not actually submit the

20  merits of a claim for a binding decision do not constitute a waiver of Defendants'

21  right to remove. *Beasley v. Union Pac. R.R. Co.*, 497 F.Supp. 213, 216 (D NE

22  1980).  To this end, it has long been held that opposing a motion for temporary

23  restraining order in state court does not waive the right to remove. *Rothner v. City*

24  *of Chicago* 879 F.2d 1402, 1418(7th Cir. 1989).

25      In the instant case, on or about May 29, 2007, Plaintiff Charmaine Bennett

26  and Plaintiff Dorothy Daniels each moved for a TRO freezing the assets of the K

27  Platinum entities and appointing a Receiver.  The Superior Court specially set both

28  motions to be heard on June 1.  It must be remembered that consolidation of all

1   state cases was not ordered until June 8.  Additionally, Plaintiffs Bennett and

2   Daniels filed separate and earlier Complaints than Plaintiffs' *Doctor et al.*

3   Accordingly it cannot be said that, in opposing the TRO Defendants were

4   exhibiting a willingness to litigate an otherwise removable action in state court,

5   since at that time the *Bennett* case and the *Daniels* case had not yet been

6   consolidated with the *Doctor* case, which alone had the basis for removal.

7   Furthermore, as demonstrated, mere opposition to a TRO does not waive the right

8   to remove an action to Federal Court.

9   ## VI.    CONCLUSION

10          The Complaint by the Plaintiffs in the *Doctor* case was undisputedly

11  removable to Federal Court on the grounds that Plaintiffs sought treble damages

12  and attorneys' fees under 18 *U.S.C.* §1964(c), which are unique to Federal RICO

13  claims.  As such, Plaintiffs must not be allowed to manipulate the judicial forum

14  by forcing remand to State Court by simply dismissing the RICO claims.

15  Dismissal of these claims notwithstanding, ample grounds remain for this Court to

16  retain jurisdiction over the action, as Plaintiffs' purported state claims are

17  predicated on Federal Securities law, a subject matter committed exclusively to

18  federal jurisdiction.  On these grounds, Defendants respectfully that the Court deny

19  Plaintiffs' Motion to Remand.

20                           Respectfully Submitted,

21  DATED:  August 15, 2007          GAREEB | PHAM, LLP

22

23                           By: _____

24                               Christopher Q. Pham
                                 Attorney for Defendant,
25                               KANYA TENNYSHA COLEMAN

26

27

28

1

2  DATED:  August 15, 2007                    MEHLMAN & TERBEEK, LLP

3

4                                             By: _____ for
                                                 Marc TerBeek
5                                                 Attorney for Defendants,
6                                             K PLATINUM GROUP, INC.; K
                                              PLATINUM INTERNATIONAL GROUP,
7                                             INC.; K PLATINUM ASSOCIATES, INC.;
8                                             K PLATINUM INTERNATIONAL
                                              ASSOCIATES, INC.; K PLATINUM
9                                             FINANCIAL, INC.; K PLATINUM
10                                            INTERNATIONAL FINANCIAL, INC.; K
                                              PLATINUM REALTY, INC.; and K
11                                            PLATINUM INTERNATIONAL REALTY,
12                                            INC.; BRENDA ANN MICHELSON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I am a resident of the State of California, over the age of eighteen years, and not a party to the

3

within action. My business address is **GAREEB | PHAM LLP**, located at 707 Wilshire Boulevard, Suite 5300, Los Angeles, California 90017. On August 15, 2007, I served the

4

herein described document(s):

5

**JOINT OPPOSITION OF DEFENDANTS TO MOTION TO REMAND TO**

6

**STATE COURT BROUGHT BY PLAINTIFFS AVIS DOCTOR, ET AL., AND DOROTHY DANIELS, ET AL.**

7

☐     FACSIMILE - by transmitting via facsimile the document(s) listed above to the

8

fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

9

☒     MAIL - by placing the document(s) listed above in a sealed envelope with

10

postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

11

☐     PERSONAL SERVICE - by personally delivering the document(s) listed above

12

to the person(s) at the address(es) set forth below.

13

☐     OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day

14

delivery to the person(s) at the address(es) set forth below via.

15

☒     CM/ECF - by electronically transmitting the document(s) listed above to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of

16

Electronic Filing, and forwarding the Notices to the person(s) set forth below, who are registered participants of the CM/ECF System.

17

18

**See Service List**

19

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal

20

Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation

21

date or postage meter date is more than one day after date of deposit for mailing in affidavit.

22

    I declare under penalty of perjury under the laws of the State of California that the

23

above is true and correct. Executed on August 15, 2007, at Los Angeles, California.

24

25

26

_____

27

Miguel del Rosario

28

- 1 -

## *SERVICE LIST*

### *Bruce Sarubin vs. K Platinum Group, Inc.*
### *(Consolidated with Case Nos. MSC07-00080,MSC07-00106,MSC07-00454,*
### *MSC07-00483,MSC07-00484,MSC07-00485,MSC07-00486)*

**Attorney for Plaintiffs**
**Dorothy Daniel, Thetris Ervin,**
**Donna Wilson, Rendy Lola Perkins**
Ronald W. Carter
2201 Broadway, Suite 815
Oakland, CA 94614
Ph:    (510) 465-6500
Fx:    (510) 465-1330

**Attorney for Plaintiff**
**Bruce Sarubin**
Robert J. Scott, Jr.
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Fransisco, CA 94104
Ph:    (415) 956-2600
Fx:    (415) 438-2655

**Attorney for Plaintiff**
**Jimmie T. Braden Sr.**
Jesse Clyde Ralph
54 Macondray Lane
San Francisco, CA 94133
Fx:    (415) 776-1826

Newell Walker **(In Pro Per)**
160 Delgado Court
Vallejo CA 94591
Ph:    (707) 235-9188

**Attorney for Plaintiff**
**Amy Levesque, George Raoch, Avis Doctor, Chari Ogogo, Paulette Mayo,**
 **Karen Smith, Suzette Steinberg, Thomas Steinberg**
Christopher R. Lucas
LAW OFFICES OF GOFORTH & LUCAS
2300 Clayton Road, Suite 1460

Concord, CA 94520
Ph:    (925) 682-9500
Fx:    (925) 682-2353

***Attorney for Plaintiff***
***Charmaine Bennett***
V. Elizabeth Grayson
888 Seventh Avenue 45th Floor
New York, N.Y. 10106
Ph:    (646) 406-1512

***Attorney for Plaintiff***
***Hemwattie Docu, Theodore Docu, Hemo's House of Design, Inc***
David L. Roth
LAW OFFICES OF DAVID L. ROTH
One Kaiser Plaza, Suite 601
Oakland CA 94501
Ph:    (510) 835-8181
Fx:    (510) 287-9656